# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **: CRIMINAL NO:** 20cr213 |
| **v.** | **: DATE FILED:** 7/23/20 |
| **TARO PHARMACEUTICALS U.S.A., INC.** | **: VIOLATIONS:** |
| | 15 U.S.C. § 1 (conspiracy to |
| | : restrain trade – 2 counts) |

## INFORMATION

### COUNT ONE
### CONSPIRACY TO RESTRAIN TRADE
### (15 U.S.C. § 1)

The United States of America, acting through its attorneys, charges that, at all times relevant to this Count:

1. Defendant **TARO PHARMACEUTICALS U.S.A., INC. ("TARO U.S.A.")** was a corporation organized and existing under the laws of New York, with its principal place business in Hawthorne, New York. Defendant TARO U.S.A. was a pharmaceutical company engaged, directly or through related entities, in the manufacturing of generic drugs, and the marketing and sale of generic drugs in the United States.

2. Ara Aprahamian ("Aprahamian"), charged elsewhere, was the Vice President of Rx Marketing from in or around March 2013 until in or around April 2014, and the Vice President of Sales and Marketing from in or around April 2014 until at least in or around December 2015, at TARO U.S.A. Aprahamian was responsible for overseeing generic drug sales, pricing, and contracts at TARO U.S.A.

3.   Sandoz Inc. ("Sandoz"), charged elsewhere, a corporation with its principal place of business in New Jersey, was engaged, directly or through related entities, in the manufacturing of generic drugs, and the marketing and sale of generic drugs in the United States.

4.   Hector Armando Kellum ("Kellum"), charged elsewhere, was employed at Sandoz as the Senior Director of Pricing and Contracts and, beginning in or around November 2013, Vice President of Contracting and Business Analytics. Kellum was responsible for overseeing pricing and contracts of generic drugs for Sandoz.

5.   Cooperating witness 1 ("CW-1"), an individual known to the United States, was employed at Sandoz as a sales representative.

6.   Cooperating witness 2 ("CW-2"), an individual known to the United States, was employed at Sandoz as a pricing and contracts executive, and reported directly to Kellum.

7.   Defendant TARO U.S.A. and Sandoz were competitors in the marketing and sale of generic drugs in the United States.

8.   Various entities and individuals not made defendants in this Count participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

9.   Whenever in this Count reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## DESCRIPTION OF THE OFFENSE

10. From at least as early as March 2013 and continuing until at least December 2015, the exact dates being unknown to the United States, in the Eastern District of Pennsylvania and elsewhere, defendant

**TARO PHARMACEUTICALS U.S.A., INC.**

and its co-conspirators, including Ara Aprahamian, Sandoz, Armando Kellum, CW-1, and CW-2, knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States. The conspiracy engaged in by defendant TARO U.S.A. and its co-conspirators was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## MEANS AND METHODS

11. For the purpose of forming and carrying out the charged conspiracy, defendant TARO U.S.A. and its co-conspirators did those things that they conspired to do, including, among other things:

   (a)   discussed the allocation of and agreed to allocate customers located in the United States;

   (b)   provided and received specific non-public prices paid by allocated customers to the existing supplier;

   (c)   communicated about the timing of anticipated price increases;

   (d)   discussed and agreed to increase prices for generic drugs;

   (e)   provided and received specific non-public prices in connection with agreed-upon price increases;

(f) implemented price increases in accordance with the agreement reached;

(g) submitted bids and offers to, and declined requests to submit bids and offers from, customers in accordance with the agreement reached, including at least one customer headquartered in the Eastern District of Pennsylvania; and

(h) sold and accepted payment for generic drugs at collusive and noncompetitive prices.

## TRADE AND COMMERCE

12. During the period covered by this Count, defendant TARO U.S.A. and Sandoz sold substantial quantities of generic drugs affected by the conspiracy charged in this Count to customers located in various states in the United States. In addition, payments from affected customers, including at least one customer headquartered in the Eastern District of Pennsylvania, that purchased drugs sold by defendant TARO U.S.A. and Sandoz traveled in interstate trade and commerce.

13. During the period covered by this Count, the activities of defendant TARO U.S.A. and its co-conspirators with respect to the sale of affected generic drugs were within the flow of, and substantially affected, interstate trade and commerce.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

## COUNT TWO
## CONSPIRACY TO RESTRAIN TRADE
## (15 U.S.C. § 1)

The United States further charges that, at all times relevant to this Count:

14. The allegations in Paragraphs 1, 2, 8, and 9 of Count One are repeated, realleged, and incorporated in Count Two as if fully set forth in this Count.

15. Company A, a corporation known to the United States, had its principal place of business in Montgomery County, Pennsylvania, within the Eastern District of Pennsylvania. Company A was engaged, directly or through related entities, in the manufacturing of generic drugs, and the marketing and sale of generic drugs in the United States.

16. Cooperating witness 3 ("CW-3"), an individual known to the United States, was employed at Company A, first as a pricing executive and later as a sales executive.

17. Defendant TARO U.S.A. and Company A were competitors in the marketing and sale of generic drugs in the United States.

### DESCRIPTION OF THE OFFENSE

18. From at least as early as May 2013 and continuing until at least December 2015, the exact dates being unknown to the United States, in the Eastern District of Pennsylvania and elsewhere, defendant

**TARO PHARMACEUTICALS U.S.A., INC.**

and its co-conspirators, including Aprahamian, Company A, and CW-3, knowingly entered into and engaged in a conspiracy to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States. The conspiracy engaged in by defendant TARO U.S.A. and its co-conspirators

was a *per se* unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## MEANS AND METHODS

19. For the purpose of forming and carrying out the charged conspiracy, defendant TARO U.S.A. and its co-conspirators did those things that they conspired to do, including, among other things:

   (a) discussed and agreed to increase prices for generic drugs;

   (b) communicated about the timing of anticipated price increases;

   (c) provided and received specific non-public prices in connection with agreed-upon price increases;

   (d) negotiated the amount of agreed-upon price increases;

   (e) implemented price increases in accordance with the agreement reached;

   (f) declined requests to submit bids and offers from customers in accordance with the agreement reached; and

   (g) sold and accepted payment for generic drugs at collusive and noncompetitive prices.

## TRADE AND COMMERCE

20. During the period covered by this Count, defendant TARO U.S.A. and Company A sold substantial quantities of generic drugs affected by the conspiracy charged in this Count to customers located in various states in the United States. In addition, payments from affected customers for drugs sold by defendant TARO U.S.A. and Company A traveled in interstate trade and commerce.

21.     During the period covered by this Count, the activities of defendant TARO U.S.A. and its co-conspirators with respect to the sale of affected generic drugs were within the flow of, and substantially affected, interstate trade and commerce.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated: July 23, 2020

_____
MAKAN DELRAHIM
Assistant Attorney General

Antitrust Division
United States Department of Justice

_____
WILLIAM M. MCSWAIN
United States Attorney for the
Eastern District of Pennsylvania

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement

_____
RICHARD A. POWERS
Deputy Assistant Attorney General

_____
RYAN DANKS
Chief, Washington Criminal I

_____
EMMA M. BURNHAM
Assistant Chief, Washington Criminal I

_____
KRISTINA SRICA
REBECCA MEIKLEJOHN
Attorneys
Antitrust Division
United States Department of Justice

8

*Criminal No.*
_____

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

_____

THE UNITED STATES OF AMERICA

vs.

TARO PHARMACEUTICALS U.S.A., INC.

_____

INFORMATION

Counts
15 U.S.C. § 1 (conspiracy to restrain trade - 2 counts)

_____

A true bill.

_____
Foreman

_____

Filed in open court this _____day,
Of _____A.D. 20_____

_____
Clerk

_____

Bail, $_____