# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO:**  20cr214 |
| **v.** | : | **DATE FILED:**  7-23-20 |
| **TARO PHARMACEUTICALS U.S.A., INC.** | : | **VIOLATIONS:** |
| | | **15 U.S.C. § 1 (conspiracy to** |
| | : | **restrain trade – 2 counts)** |

## DEFERRED PROSECUTION AGREEMENT

The United States Department of Justice, Antitrust Division ("United States") and Taro Pharmaceuticals U.S.A., Inc. ("Taro U.S.A." or the "Company"), a corporation organized and existing under the laws of New York, by and through its undersigned representative, pursuant to authority granted by its board of directors, enter into this Deferred Prosecution Agreement (the "Agreement"), the terms and conditions of which are as follows:

### Criminal Information and Acceptance of Responsibility

1.      Taro U.S.A. acknowledges and agrees that the United States will file a two-count criminal Information in the United States District Court for the Eastern District of Pennsylvania. The Information will charge Taro U.S.A. with the following two counts, all in violation of the Sherman Antitrust Act, 15 U.S.C. § 1: (1) conspiring with Sandoz Inc., a generic drug company with its principal place of business in New Jersey, to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States, from at least as early as March 2013 and continuing until at least December 2015; and (2) conspiring with Company A, a generic drug company with its principal place of business in Montgomery County, Pennsylvania, to suppress and eliminate competition

by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, generic drugs sold in the United States, from at least as early as May 2013 and continuing until at least December 2015.  In so doing, Taro U.S.A.: (a) knowingly waives its right to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and (b) knowingly waives for the purposes of this Agreement and for the purposes of any charges by the United States arising out of the conduct described in the Statement of Facts (attached hereto as Attachment A and incorporated by reference into this Agreement) any objection with respect to venue and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the Eastern District of Pennsylvania.  The United States agrees to defer prosecution of Taro U.S.A. pursuant to the terms and conditions described below.

2.      Taro U.S.A. acknowledges that, under United States law, it is responsible for the acts of its officers, directors, employees, and agents that give rise to the charges in the Information.  Taro U.S.A. admits, accepts, and acknowledges that the facts set forth in the Statement of Facts are true and accurate.  Should the United States pursue the prosecution that is deferred by this Agreement, Taro U.S.A. agrees that it will neither contest the admissibility of, nor contradict, any of the facts set forth in the Statement of Facts in any such proceeding, including any guilty plea or sentencing proceeding.  Neither this Agreement nor the criminal Information is a final adjudication of the matters addressed in such documents.

<u>Parties to and Scope of the Agreement</u>

3.      Taro U.S.A. is organized under the laws of and headquartered in New York.  This Agreement binds Taro U.S.A. and the United States Department of Justice Antitrust Division.  It

specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies, or any other authorities. This Agreement also creates contingent rights and obligations for Taro U.S.A.'s current officers, directors, consultants, and employees as of the date of the signature of this Agreement, who will be collectively referred to as "Covered Individuals." Former officers, directors, consultants, and employees as of the date of the signature of this Agreement; Ara Aprahamian, who has been separately charged; and the individual(s) listed in Attachment B filed under seal and incorporated by reference into this Agreement, are not Covered Individuals, and therefore do not have any contingent rights or obligations under this Agreement. The contingent rights and obligations for Covered Individuals are limited expressly as described below.

## Length of the Agreement

4.      This Agreement is effective for a period beginning on the date on which the Information is filed and ending three (3) years from that date (the "Term"), except for the Cooperation Obligations set forth in Paragraphs 6–7 below. Taro U.S.A. agrees that in the event that the United States determines, in its sole discretion, that Taro U.S.A. has violated any provision of this Agreement, an extension or extensions of the term of the Agreement may be imposed by the United States, in its sole discretion, for up to a total additional time period of one year, without prejudice to the United States' right to proceed as provided in Paragraphs 17–21 below. Any extension of the Agreement extends all terms of this Agreement for an equivalent period.

## Relevant Considerations

5.      The United States enters into this Agreement based on the individual facts and circumstances of this case. Among the facts considered were the following: (a) a conviction

(including a guilty plea) would likely result in Taro U.S.A.'s mandatory exclusion from all federal health care programs under 42 U.S.C. § 1320a-7 for a period of at least five years, which would result in substantial consequences to the Company's employees and customers outside the federal health care programs; (b) Taro U.S.A. has agreed to cooperate in the United States' ongoing investigation into and prosecution of criminal antitrust violations among generic drug manufacturers and certain current and former employees of those manufacturers; (c) Taro U.S.A.'s commitment to cooperate will remain ongoing; and (d) this Agreement can ensure that integrity has been restored to Taro U.S.A.'s operations and preserve its financial viability while preserving the United States' ability to prosecute it should material breaches occur.

<u>Cooperation Obligations</u>

6.      Until the date upon which all investigations and prosecutions, whether of former employees of the Company or other individuals or entities, arising out of the conduct described in this Agreement are concluded, whether or not they are concluded within the three-year period specified in Paragraph 4, Taro U.S.A. shall cooperate fully and truthfully with the United States in the current federal criminal investigation of violations of federal antitrust and related criminal laws involving the production and sale of generic drugs in the United States, and any criminal litigation or other criminal proceedings currently pending, arising out of, or resulting from such investigation to which the United States is a party (collectively "Federal Criminal Proceeding"). The Federal Criminal Proceeding includes, but is not limited to, a criminal investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in the current federal criminal investigation of violations of federal antitrust and related criminal laws involving the

production and sale of generic drugs in the United States. The full, truthful, and continuing cooperation of Taro U.S.A. will include, but not be limited to:

(a)     producing to the United States all documents (including relevant custodial information), information, data, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, and with translations into English, in the possession, custody, or control of Taro U.S.A., that are requested by the United States in connection with the Federal Criminal Proceeding; and

(b)     using its best efforts to secure the full, truthful, and continuing cooperation of the Covered Individuals as may be requested by the United States. Such efforts will include, but not be limited to, making these persons available in the United States and at other mutually agreed-upon locations at Taro U.S.A.'s expense for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with the Federal Criminal Proceeding.

7.     The full, truthful, and continuing cooperation of Covered Individuals will be subject to the procedures and protections of this Paragraph, and will include, but not be limited to:

(a)     producing in the United States and at other mutually agreed-upon locations, not at the expense of the United States, all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, and with translations into English, that are requested by attorneys and agents of the United States in connection with the Federal Criminal Proceeding;

DocuSign Envelope ID: 5B85FCA5-C59F-4D1C-B5A2-40810F5F5272

(b)     being available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with the Federal Criminal Proceeding;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Criminal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503 *et seq.*), or conspiracy to commit such offenses;

(d)     otherwise voluntarily providing to the United States any material or information not requested in (a)–(c) of this Paragraph and not protected under the attorney-client privilege or work-product doctrine that he or she may have that is related to the Federal Criminal Proceeding;

(e)     when called upon to do so by the United States in connection with the Federal Criminal Proceeding, participating in affirmative investigative techniques, including but not limited to making telephone calls, recording conversations, and introducing law enforcement officials to other individuals, with all such activity being conducted only at the express direction and under the supervision of attorneys and agents of the United States;

(f)     when called upon to do so by the United States in connection with the Federal Criminal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court

6

proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401–402), and obstruction of

justice (18 U.S.C. § 1503 *et seq.*); and

      (g)    agreeing that, if the agreement not to prosecute him or her pursuant to this

Agreement is void, the statute of limitations period for any offense will be tolled for the

period between the date of signature of this Agreement and six months after the date that

the United States gave notice of its intent to void its obligations to that person under this

Agreement.

Nothing in this Paragraph creates any obligations by or for any person who is not a Covered

Individual.

      8.    In addition to the obligations described above, during the Term of the Agreement,

should Taro U.S.A. learn of credible evidence or allegations of criminal violations of United

States law affecting the competitive process by Taro U.S.A., or by any present or former officers,

directors, employees, or agents, Taro U.S.A. shall promptly report such evidence or allegations

to the United States.  Any information that Taro U.S.A. thus discloses to the United States will

likely include proprietary, financial, confidential, and competitive business information.  Public

disclosure of the information and reports could discourage cooperation, impede pending or

potential government investigations, and thus undermine the United States' objectives in

obtaining such reports.  For these reasons, among others, the information and reports and the

contents thereof are intended to remain and shall remain nonpublic, except as otherwise agreed

to by the parties in writing, or except to the extent that the United States determines in its sole

discretion that disclosure would be in furtherance of its discharge of its duties and

responsibilities or is otherwise required by law.

<u>Penalty and Restitution</u>

9.     The United States and Taro U.S.A. agree that Taro U.S.A. will pay a monetary penalty in the amount of $205,653,218, plus interest beginning August 24, 2020, and computed daily at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding August 24, 2020, to the United States Treasury.  Taro U.S.A. agrees to pay the penalty in the following installments:  $102,826,609 by August 24, 2020, and an additional $102,826,609 plus interest by August 24, 2021.  Taro U.S.A. may prepay the monetary penalty in full or in part at any time and in one or more installments.  There shall be no prepayment fees charged nor any discounts granted for prepayment.  All payments made by Taro U.S.A. shall be applied first to interest accrued through the date of payment, and any excess shall be applied to the outstanding principal balance of the monetary penalty, with such excess portion of the payments allocated to principal being applied to the scheduled installments described in the second sentence of this paragraph.  Interest shall be calculated hereunder using the rate set forth above on a simple, non-compounding basis.  Taro U.S.A. and the United States agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 5.

10.     The penalty set forth in Paragraph 9 is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the United States that $205,653,218 is the maximum penalty that may be imposed in any future prosecution in the event of a breach of this Agreement, and the United States is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the United States agrees that under those circumstances, it will recommend to the Court that any amount paid under this

DocuSign Envelope ID: 5B85FCA5-C59F-4D1C-B5A0-4061955FC272

Agreement should be offset against any fine the Court imposes as part of a future judgment. Taro U.S.A. acknowledges that no tax deduction may be sought, and agrees that no tax deduction will be sought, in the United States or elsewhere in connection with the payment of any part of this penalty.  In the event that the United States, pursuant to Paragraphs 17 and 18, determines that Taro U.S.A. has breached the Agreement and the Company fails to effect a cure (as provided in Paragraph 18, if applicable), the entire amount of the monetary penalty, less amounts already paid (if any), shall be due and owing within ten (10) business days after receipt by Taro U.S.A. from the United States of written notice of breach.  If Taro U.S.A. fails to either cure or pay the balance due within ten (10) business days of receipt of the written notice of breach, Taro U.S.A. will consent to entry of a civil judgement for the full balance due plus all reasonable costs incurred in the civil action, including attorney's fees and expenses; will provide the United States with its most recent audited financial statement; and will not oppose any collection action undertaken by the United States to satisfy the civil judgement.

11.     In light of the availability of civil causes of action, and civil cases already filed against Taro U.S.A., including the multidistrict litigation *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, Case No. 2:16-md-2724, consolidated in the United States District Court for the Eastern District of Pennsylvania, this Agreement does not include any provision for restitution.

<u>Conditional Release from Liability</u>

12.     In return for the full and truthful cooperation of Taro U.S.A., and compliance with the other terms and conditions of this Agreement:

(a)     The United States agrees that, except as provided by this Agreement, it will not bring criminal charges against Taro U.S.A. for any act or offense committed

before the date of signature of this Agreement, in furtherance of an antitrust conspiracy

involving the production or sale of generic drugs in the United States.

(b)     The United States further agrees that, except as provided by this

Agreement, it will not bring criminal charges against any Covered Individual for any act

or offense committed before the date of signature of this Agreement, in furtherance of an

antitrust conspiracy involving the production or sale of generic drugs in the United States,

provided that at the time of the conduct, the Covered Individual was (i) employed by

Taro U.S.A. or providing services on its behalf, (ii) acting within the scope of his or her

responsibilities at or for Taro U.S.A., and (iii) the actions were at least in part in Taro

U.S.A.'s interests.

(c)     Failure by any person or the Company to comply fully with his or her

Cooperation Obligations pursuant to Paragraphs 6–8 will void the United States'

agreement in Paragraphs 12(a) and (b), and any such person or the Company may be

prosecuted criminally for any federal crime of which the United States has knowledge.

(d)     The United States' agreement in Paragraphs 12(a) and (b) does not apply

to subornation of perjury (18 U.S.C. § 1622), false statements (18 U.S.C. § 1001),

obstruction of justice (18 U.S.C. § 1503 *et seq.*), contempt (18 U.S.C. §§ 401–402), or

conspiracy to commit such offenses.  Its agreement in Paragraphs 12(a) and (b) also does

not apply to civil matters of any kind, any civil or criminal violation of the federal tax or

securities laws or conspiracy to commit such offenses, or any crimes of violence.

<u>Related Administrative Proceedings</u>

13.     Taro U.S.A. understands that it may be subject to suspension or debarment action

by state or federal agencies other than the United States Department of Justice, Antitrust

Division based upon this Agreement, and that this Agreement in no way controls what action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of Taro U.S.A. as a matter for that agency to consider before determining what action, if any, to take.

Corporate Compliance Program

14.     Taro U.S.A. represents that it has implemented and will continue to implement a compliance program designed to prevent and detect criminal antitrust violations throughout its operations, including those of its subsidiaries. Implementation of these policies and procedures shall not be construed in any future enforcement proceeding as providing immunity or amnesty for any crimes not disclosed to the Antitrust Division as of the date of this Agreement for which Taro U.S.A. would otherwise be responsible.

Deferred Prosecution

15.     In consideration of: (a) the future cooperation of Taro U.S.A. described in Paragraphs 6–8; and (b) Taro U.S.A.'s payment of a monetary penalty pursuant to Paragraphs 9–10, the United States agrees that any prosecution of Taro U.S.A. for the conduct set forth in the attached Statement of Facts be and hereby is deferred for the Term of this Agreement.

16.     The United States further agrees that if Taro U.S.A. fully complies with all obligations under this Agreement, the United States will not continue the criminal prosecution of Taro U.S.A. described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire, except for the Cooperation Obligations provided in Paragraphs 6–7. Within thirty (30) days of the Agreement's expiration, the United States shall seek dismissal with prejudice of the criminal Information described in Paragraph 1.

11

<u>Breach</u>

17.     If, during the Term of this Agreement, the United States determines, in its sole

discretion, that Taro U.S.A. (a) committed any felony under United States federal law

subsequent to the signing of this Agreement, (b) at any time provided to the United States in

connection with this Agreement deliberately false, incomplete, or misleading information,

including in connection with its disclosure of information about individual culpability, (c) fails to

cooperate as set forth in Paragraphs 6–8 of this Agreement, or (d) otherwise breached the

Agreement, Taro U.S.A. shall thereafter be subject to prosecution for any federal criminal

violation related to the production and sale of generic drugs in the United States of which the

United States has knowledge, including the charges in the Information described in Paragraph 1,

which may be pursued by the United States in the United States District Court for the Eastern

District of Pennsylvania or any other appropriate venue.  Any such prosecution may be premised

on information provided by Taro U.S.A., or its current or former officers, directors, employees,

or agents.  Any such prosecution that is not time barred by the applicable statute of limitations on

the date of the signing of this Agreement may be commenced against Taro U.S.A.

notwithstanding the expiration of the statute of limitations between the signing of this Agreement

and the expiration of the Term plus one year.  Thus, by signing this Agreement, Taro U.S.A.

agrees that the statute of limitations with respect to any such prosecution that is not time barred

on the date of the signing of this Agreement shall be tolled for the Term plus one year.

18.     In the event that the United States determines that Taro U.S.A. has breached this

Agreement, the United States agrees to provide Taro U.S.A. with written notice of such breach

prior to instituting any prosecution resulting from such breach.  Taro U.S.A. shall, within thirty

(30) days of receipt of such notice, have the opportunity to respond to the United States in

writing to explain the nature and circumstances of such breach, as well as the actions Taro

U.S.A. has taken to address and remediate the situation, which explanation the United States

shall consider in determining whether to institute a prosecution.

19.     In the event that the United States determines that Taro U.S.A. has breached this

Agreement: (a) all statements made by or on behalf of Taro U.S.A. to the United States or to the

Court, including the attached Statement of Facts, and any testimony given by Taro U.S.A. before

a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent

to this Agreement, and any leads derived from such statements or testimony, shall be admissible

in evidence in any and all criminal proceedings brought by the United States against Taro

U.S.A.; and (b) Taro U.S.A. shall not assert any claim under the United States Constitution, Rule

11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or

any other federal law or rule that statements made by or on behalf of Taro U.S.A. prior or

subsequent to this Agreement, or any leads derived therefrom, should be suppressed.  The

decision whether the conduct or statements of any Covered Individual, or any person acting on

behalf of, or at the direction of, Taro U.S.A. will be imputed to Taro U.S.A. for the purpose of

determining whether Taro U.S.A. has breached any provision of this Agreement shall be in the

sole discretion of the United States.

20.     Taro U.S.A. acknowledges that the United States has made no representations,

assurances, or promises concerning what sentence may be imposed by the Court if Taro U.S.A.

breaches this Agreement and this matter proceeds to judgment.  Taro U.S.A. further

acknowledges that any such sentence is solely within the discretion of the Court and that nothing

in this Agreement binds or restricts the Court in the exercise of such discretion.

21.     On the date that the period of deferred prosecution specified in this Agreement

expires or on the first business day thereafter, Taro U.S.A., by the Chief Executive Officer of the

Company and the Chief Financial Officer of the Company, will certify to the United States that

Taro U.S.A. has met its disclosure obligations pursuant to Paragraph 8 of this Agreement.  Each

certification will be deemed a material statement and representation by Taro U.S.A. to the

executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be

deemed to have been made in the judicial district in which this Agreement is filed.

<u>Sale or Merger of Taro U.S.A.</u>

22.     Except as may otherwise be agreed by the parties in connection with a particular

transaction, Taro U.S.A. agrees that in the event that, during the Term, it undertakes any change

in corporate form, including if it sells, merges, or transfers business operations that are material

to its consolidated operations, or to the operations of its parent, subsidiaries, or affiliates

involved in the conduct described in the attached Statement of Facts, as they exist as of the date

of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other

change in corporate form, it shall include in any contract for sale, merger, transfer, or other

change in corporate form a provision binding the purchaser, or any successor in interest thereto,

to the obligations described in this Agreement.  The purchaser or successor in interest must also

agree in writing that the United States' ability to enforce all provisions of this Agreement,

including to determine that it has been breached, is applicable in full force to that entity.  Taro

U.S.A. agrees that the failure to include these provisions in the transaction will make any such

transaction null and void.  Taro U.S.A. shall provide notice to the United States at least thirty

(30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form.

The United States shall notify Taro U.S.A. prior to such transaction (or series of transactions) if

it determines that the transaction(s) will have the effect of circumventing or frustrating the

enforcement purposes of this Agreement.  If, at any time during the Term, Taro U.S.A. engages

in a transaction(s) that has the effect of circumventing or frustrating the purposes of this

Agreement, the United States may deem it a breach of this Agreement pursuant to Paragraphs

17–21 of this Agreement.  Nothing herein shall restrict Taro U.S.A. from indemnifying (or

otherwise holding harmless) the purchaser or successor in interest for penalties or other costs

arising from any conduct that may have occurred prior to the date of the transaction, so long as

such indemnification does not have the effect of circumventing or frustrating the purposes of this

Agreement, as determined by the United States.

Public Statements by Taro U.S.A.

23.     Taro U.S.A. expressly agrees that it shall not, through present or future attorneys,

officers, directors, employees, agents, or any other person authorized to speak for Taro U.S.A.,

its parent, affiliates, or subsidiaries, make any public statement, in litigation or otherwise,

contradicting the acceptance of responsibility by Taro U.S.A. set forth above or any of the facts

set forth in the Statement of Facts.  Any such contradictory statement shall, subject to cure rights

of Taro U.S.A. described below, constitute a breach of this Agreement and Taro U.S.A.

thereafter shall be subject to prosecution as set forth in this Agreement.  The decision whether

any public statement by any such person contradicting a fact contained in the Statement of Facts

will be imputed to Taro U.S.A. for the purpose of determining whether it has breached this

Agreement shall be at the sole discretion of the United States.  If the United States determines

that a public statement by any such person contradicts in whole or in part any fact(s) set forth in

the Statement of Facts, the United States shall so notify Taro U.S.A., and Taro U.S.A. may avoid

a breach of this Agreement by publicly repudiating such statement(s) within five (5) business

days after notification.  Taro U.S.A. shall be permitted to raise defenses and to assert affirmative

claims in other proceedings relating to the matters set forth in the Statement of Facts provided

15

that such defenses and claims do not contradict, in whole or in part, any fact(s) set forth in the

Statement of Facts.  This Paragraph does not apply to any statement made by any present or

former officer, director, employee, or agent of Taro U.S.A. in the course of any criminal,

regulatory, or civil case initiated against such individual, unless such individual is speaking on

behalf of Taro U.S.A.

24.     Taro U.S.A. agrees that if it, its parent, or any of its subsidiaries or affiliates

issues a press release or holds any press conference in connection with this Agreement, Taro

U.S.A. shall first consult the United States to determine (a) whether the text of the release or

proposed statements at the press conference are true and accurate with respect to matters between

the United States and Taro U.S.A.; and (b) whether the United States has no objection to the

release.  Statements at any press conference concerning this matter shall be consistent with such

a press release.

<u>Notice</u>

25.     Any notice to the United States under this Agreement shall be given by personal,

overnight delivery by a recognized delivery service, or registered or certified mail, addressed to

Kristina Srica, 450 5th Street NW, Suite 11300, Washington, DC 20530.  Any notice to Taro

U.S.A. under this Agreement shall be given by personal, overnight delivery by a recognized

delivery service, or registered or certified mail, addressed to the General Counsel of Taro

Pharmaceuticals U.S.A., Inc., with a copy to its attorney, Jeffrey Green, Sidley Austin LLP, 1501

K Street N.W., Washington, DC 20005.  Notice shall be effective upon actual receipt by the

United States or Taro U.S.A.

<u>Complete Agreement</u>

26.     This Agreement and its attachments set forth all the terms of this Deferred

Prosecution Agreement between Taro U.S.A. and the United States.  No amendments,

modifications or additions to this Agreement shall be valid unless they are in writing and signed

by the United States, the attorneys for Taro U.S.A., and a duly authorized representative of Taro

U.S.A.

DATED: __7/23/20__

Respectfully submitted,

BY: _____          BY: _____
Uday Baldota                                             Kristina Srica
Chief Executive Officer                                 Attorney
Taro Pharmaceuticals U.S.A., Inc.                       U.S. Department of Justice
                                                        Antitrust Division
                                                        450 5th Street, NW
                                                        Washington, DC 20530
                                                        (202) 598-6505

BY: _____          BY: _____
Jeffrey Green                                           William M. McSwain
Sidley Austin LLP                                       United States Attorney
Counsel for Taro Pharmaceuticals U.S.A., Inc.           Eastern District of Pennsylvania

**Attachment A: Statement of Facts**

From in or about March 2013 and continuing until in or about December 2015 ("the relevant period"), Taro Pharmaceuticals U.S.A., Inc. ("Taro U.S.A."), a corporation organized and existing under the laws of New York with its principal place of business in Hawthorne, New York, was engaged in the manufacturing, marketing, and sale of generic drugs.

During the relevant period, Taro U.S.A., through certain of its officers and employees, including Ara Aprahamian, Taro U.S.A.'s Vice President of Rx Marketing, and beginning in April 2014, Taro U.S.A.'s Vice President of Sales and Marketing, conspired with other individuals and entities engaged in the manufacture and sale of generic drugs to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and/or stabilize, maintain, and fix prices of certain generic drugs sold in the United States in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.  Taro U.S.A.'s sales of generic drugs affected by these conspiracies totaled at least $524,625,555.  Specifically:

From in or about March 2013 and continuing until in or about December 2015, Taro U.S.A. conspired to suppress and eliminate competition by agreeing to allocate customers and rig bids for, and stabilize, maintain, and fix prices of, certain generic drugs in the United States, including clobetasol (cream, emollient cream, gel, ointment, and solution), desonide ointment, and nystatin triamcinolone cream, with Sandoz Inc. ("Sandoz"), a generic drug company with its principal place of business in New Jersey; Armando Kellum, Sandoz's Senior Director of Pricing and Contracts, and beginning in November 2013, Sandoz's Vice President of Contracting and Business Analytics; and other individuals.  Between in or about March 2013 and December 2015, the generic drugs sold by Taro U.S.A. and Sandoz that were affected by this conspiracy, as well as payments for the affected generic drugs, traveled in interstate trade and commerce.  The

business activities of Taro U.S.A. and its co-conspirators in connection with the manufacture and

sale of generic drugs affected by this conspiracy were within the flow of, and substantially

affected, interstate trade and commerce.  Generic drugs affected by the activities of Taro U.S.A.

and its co-conspirators were sold to customers located in various states in the United States,

including within the Eastern District of Pennsylvania.

From in or about May 2013 and continuing until in or about December 2015, Taro U.S.A.

conspired to suppress and eliminate competition by agreeing to allocate customers and rig bids

for, and stabilize, maintain, and fix prices of, certain generic drugs in the United States, including

etodolac immediate release and extended release and carbamazepine tablets and chews, with

Company A, a generic drug company with its principal place of business in Montgomery

County, Pennsylvania, within the Eastern District of Pennsylvania, and other individuals.

Between in or about May 2013 and December 2015, the generic drugs affected by this

conspiracy sold by Taro U.S.A. and Company A, as well as payments for the affected generic

drugs, traveled in interstate trade and commerce.  The business activities of Taro U.S.A. and its

co-conspirators in connection with the manufacture and sale of the generic drugs affected by this

conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

The generic drugs affected by the activities of Taro U.S.A. and its co-conspirators were sold to

customers in various states in the United States, including within the Eastern District of

Pennsylvania.